**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE**

| | |
|---|---|
| TRINA SOLAR SCIENCE & TECHNOLOGY (THAILAND) LTD., ) ) ) | |
| *Plaintiff,* ) | **PUBLIC VERSION** |
| ) | |
| CANADIAN SOLAR INTERNATIONAL LTD. *et al.* ) ) | Confidential information has been deleted on pages 12 and 13. |
| *Plaintiff-Intervenors,* ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES, ) | **Consol. Court No. 23-00227** |
| *Defendant,* ) | |
| ) | |
| and ) | |
| ) | |
| AUXIN SOLAR INC., ) | |
| ) | |
| *Defendant-Intervenor.* ) | |

**REPLY BRIEF OF PLAINTIFF TRINA SOLAR SCIENCE &
TECHNOLOGY (THAILAND) LTD.**

Jonathan M. Freed
MacKensie R. Sugama
**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C.  20003
(202) 223-3760

Counsel to Trina Solar Science &
Technology (Thailand) Ltd.

Dated:  November 15, 2024

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE**

_____

|  |  |  |
|---|---|---|
| TRINA SOLAR SCIENCE & TECHNOLOGY (THAILAND) LTD., | ) ) ) | |
| | ) | **PUBLIC VERSION** |
| *Plaintiff,* | ) | |
| | ) | |
| CANADIAN SOLAR INTERNATIONAL LTD. *et al.* | ) ) | Confidential information has been deleted on pages 12 and 13. |
| *Plaintiff-Intervenors,* | ) ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | **Consol. Court No. 23-00227** |
| *Defendant,* | ) ) | |
| | ) | |
| and | ) | |
| | ) | |
| AUXIN SOLAR INC., | ) | |
| | ) | |
| *Defendant-Intervenor.* | ) | |

_____)

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel at Trade Pacific PLLC hereby certifies that the Reply Brief of Plaintiff Trina Solar Science & Technology (Thailand) Ltd., dated November 15, 2024, complies with the word-count limitation described in the Scheduling Order.  The reply brief contains 3,228 words according to the word-count function of the word-processing software used to prepare the brief.

**Court No. 23-00227**                                                    **Page 2**

Respectfully submitted,

/s/ Jonathan M. Freed
Jonathan M. Freed
MacKensie R. Sugama

**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C.  20003
(202) 223-3760

Dated:  November 15, 2024

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................. ii

I.    INTRODUCTION ......................................................................................... 1

II.   ARGUMENT .................................................................................................. 3

    A.   Defendant Fails to Respond to Plaintiffs' Argument that
         Commerce's Finding on the Nature of the Prouduction Process
         Compels a Negative Determination ................................................. 3

    B.   Defendant Misstates Critical Findings on the Record .................. 6

    C.   Commerce Unreasonably Contradicted its "Minor or
         Insignificant" Findings when Analyzing the R&D Factor ............ 9

III.  CONCLUSION ............................................................................................ 16

# TABLE OF AUTHORITIES

Page

## Cases

*Clagon Carbon Corp. v. United States*, 145 F.Supp.3d. 1312 (Ct. Int'l Trade 2015) ................................................................. 5

*Coalition of Am. Flange Producers v. United States*, 517 F. Supp. 3d 1378 (Ct. Int'l Trade 2021) .................................................. 5, 16

*Heckler v. Chaney*, 105 S. Ct. 1649 (1985) ....................................... 13

*Home Prods. Int'l, Inc. v. United States*, 837 F.Supp.2d 1294 (2012) ......... 5, 16

*Hor Liang Industrial Corp. v. United States*, 337 F.Supp.3d 1310 (Ct. Int'l Trade 2018) ........................................................... 6

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983). ...................................................... 5, 16

*Nielsen v. Preap*, 139 S. Ct. 954 (2019) ......................................... 14

*United States v. Zannino*, 895 F.2d 1 (1st Cir. 1990) ............................ 6

*Washington Red Raspberry Com'n v. United States*, 657 F.Supp. 537 (Ct. Int'l Trade 1987) ......................................................... 13

## Statutes

19 U.S.C. § 1677j(b)(1) ....................................................... 15
19 U.S.C. § 1677j(b)(2) ...................................................passim

## Administrative Determinations

*Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China*, 88 Fed. Reg. 57,419 (Dep't Commerce Aug. 23, 2023) ................................................................. 1

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China*, 77 Fed. Reg. 73,017 (Dep't Commerce Dec. 7, 2012) .................................................................................... 2

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from the People's Republic of China*, 77 Fed. Reg. 73,018 (Dep't Commerce Dec. 7, 2012); ................................................................................. 2

## REPLY BRIEF OF PLAINTIFF
## <u>TRINA SOLAR SCIENCE & TECHNOLOGY</u>
## <u>(THAILAND) LTD.</u>

## I.      INTRODUCTION

Plaintiff Trina Solar Science & Technology (Thailand) Ltd. ("TTL")

submits this brief in reply to the September 25, 2024, response brief filed by

Defendant, the United States.  *See* Def. Resp to Pls. Rule 56.2 Mot. J. Upon

Agency. R., ECF No. 48 (Sept. 25, 2024) ("Def. Resp. Br.").  Plaintiff contests

numerous aspects of the U.S. Department of Commerce's ("Commerce") final

affirmative determination of circumvention of the antidumping and

countervailing duty orders on *Crystalline Silicon Photovoltaic Cells, Whether*

*or Not Assembled into Modules, from the People's Republic of China.  See* Pl's.

Rule 56.2 Mot. J. Agency R., ECF No. 43 (June 13, 2024) ("Pl. Br.")[1], *see also*

*Antidumping and Countervailing Duty Orders on Crystalline Silicon*

*Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's*

*Republic of China: Final Scope Determination and Final Affirmative*

*Determinations of Circumvention with Respect to Cambodia, Malaysia,*

*Thailand, and Vietnam*, 88 Fed. Reg. 57,419 (Aug. 23, 2023), PD 596 ("*Final*

---

[1] Plaintiff, TTL, and Plaintiff-Intervenors, Canadian Solar International
Limited ("CSIL") and Canadian Solar Manufacturing (Thailand) Co., Ltd.
("THSM"), jointly submitted a memorandum in support of motion for judgment
upon the agency record (collectively, "Plaintiffs").

Ct. No. 23-00227                                          Public Reply Brief

*Determination*"), and accompanying Issues and Decision Memorandum, PD

595 ("Decision Memo").

In its response brief, Defendant misstates critical facts of this case

pertaining to Commerce's findings under the "minor or insignificant" factors

of 19 U.S.C. § 1677j(b)(2). Defendant also fails to respond to numerous

arguments raised in Plaintiffs' opening brief concerning Commerce's unlawful

weighing of the statutory factors. Defendant cannot ignore over a decade of

established agency practice,[2] legislative history, and substantial evidence by

applying determinative weight to the research and development ("R&D")

factor over all other factors. It bears repeating that for Trina, Commerce

found that four out of the five factors weighed *against* a finding that the

TTL's operations in Thailand were minor or insignificant.[3] Defendant cannot

---

[2] Based on a cumulation of prior affirmative circumvention determinations under §1677j(b) by Commerce, in fifteen out of eighteen of those affirmative determinations, Commerce found that all five "minor or insignificant" factors weighed in favor of finding the process of assembly or completion to be minor. For three of those eighteen decisions, Commerce found that four out of five factors weighed in favor of the process of completion to be minor. Case Brief from Trade Pacific PLLC, *TTL's Second Tranche Case Brief* (Apr. 26, 2023) C.R. 282, Appx19787-Appx19820.

[3] *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order*, 77 Fed. Reg. 73,018 (Dep't Commerce Dec. 7, 2012); *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Countervailing Duty Order*, 77 Fed. Reg. 73,017 (Dep't Commerce Dec. 7, 2012) (collectively, "*Solar I* Orders").

2

rely on the R&D factor alone and ignore its other findings to reasonably justify an affirmative finding of circumvention.

For the reasons below, the Court must remand to Commerce with instructions to reverse the challenged determination in accordance with the Court's findings.

## II.    ARGUMENT

### A.    Defendant Fails to Respond Plaintiffs' Argument that Commerce's Finding on the Nature of the Production Process Compels a Negative Determination

At pages 57 to 62 of Plaintiffs' brief, Plaintiffs explained that Commerce, when evaluating the nature of the production process under 19 U.S.C. § 1677j(b)(2)(C), reconfirmed in these inquiries that crystalline photovoltaic ("CSPV") cell and module manufacturing (including the formation of the p/n junction) is a major, complex manufacturing process that does not amount to minor or insignificant processing.  Pl. Br., at 57, *citing* Decision Memo at 52, Appx1107.  Plaintiffs explained that Commerce made numerous key findings on the complex and extensive nature of CSPV cell production through its comparison to the production of upstream ingots and wafers.  *Id.,* at 60–61, *citing* Decision Memo at 50–52, Appx1106.  Commerce found that greater technology was required to produce solar cells than to produce ingots and that cell and module production required significantly

more manufacturing and skilled labor. *Id.* It also explained that CSPV cell and module production requires *over 100 different inputs*, "whereas converting polysilicon into wafers only involves a handful of inputs." *Id., citing* Decision Memo at 52, Appx1107. In addition, Commerce found that:

> solar cell production requires sophisticated, precise and advanced automation equipment, and solar module production requires highly automated machinery and accurate quality-testing requirement at multiple stages. Meanwhile, the IAE Report indicates that ingot production uses simpler, more conventional equipment. Therefore, producing solar cells and modules in the inquiry country involves a multi-step production process that requires more precise and sophisticated equipment at multiple stages compared to producing ingots and wafers in China.

*Id.*, (internal quotations omitted).

Overall, Commerce's findings with regard to the § 1677j(b)(2)(C) nature of processing factor logically compelled a negative determination as to circumvention.

Yet, Defendant did not address these points in any manner in its response brief. It has failed to answer this point. Neither Commerce nor Defendant have offered any rationale explaining how Commerce's overall circumvention determination is consistent with its detailed findings regarding the nature of processing in Thailand under § 1677j(b)(2)(C). Commerce's findings regarding the nature of processing should have ended the inquiries and Defendant's failure to address this issue should render moot the remaining issues. Commerce's findings under §1677j(b)(2)(C)

compel only one conclusion, which is that cell and module production are ***not*** minor or insignificant processes.

Commerce's conclusion regarding the § 1677j(b)(2)(C) nature of processing factor mirrors its prior determinations that cell completion (*i.e.*, the p/n junction formation) was the significant turning point for origin purposes, rather than an earlier process in production, such as ingot slicing or wafer production. *See* Pl. Br., at 9–11. Commerce's findings under §1677j(b)(2)(C) are fully supported. Yet, Commerce's determination to ignore the conclusions compelled by that finding cannot be sustained, especially here where Commerce and Defendant have failed to provide any rational connection between the nature of processing finding and the overall determination. *See Coalition of Am. Flange Producers v. United States*, 517 F. Supp. 3d 1378, 1381 (Ct. Int'l Trade 2021) (citing *Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

It is apparent that Defendant does not have any arguments to respond to Plaintiffs on this point, but even if such arguments exist, they were not expressed or developed in Defendant's response brief and should be deemed waived. *See Clagon Carbon Corp. v. United States*, 145 F.Supp.3d. 1312, 1322 (Ct. Int'l Trade 2015) (finding the government's defending arguments waived after it chose not to address the merits of plaintiff's arguments in response briefs); *see also Home Prods. Int'l, Inc. v. United States*, 837

Ct. No. 23-00227                                     Public Reply Brief

F.Supp.2d 1294, 1301 (2012) *(quoting United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("{I}ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *Hor Liang Industrial Corp. v. United States*, 337 F.Supp.3d 1310, 1323 (Ct. Int'l Trade 2018) (finding waiver where the government failed to substantially respond to an argument raised by Plaintiff).

### B.    Defendant Misstates Critical Findings on the Record

In any circumvention proceeding, Commerce's analysis of the five "minor or insignificant" factors under 19 U.S.C. § 1677j(b)(2) is dispositive to its ultimate circumvention determination.  *See* Pls. Br., at 34–35.  Yet, throughout its response brief, Defendant repeatedly misstates Commerce's findings as to Plaintiff of the "minor or insignificant" factors under 19 U.S.C. § 1677j(b)(2).  In addition, Defendant misstates Commerce's analysis on the significant nature of the CSPV cell and module production process by ignoring the extent and complexity of the processes involved.

First, Defendant incorrectly asserts that under subsection (E) of §1677j(b)(2) "Commerce found that the value of processing in Thailand carried out by ***Trina*** and Canadian Solar represents a small proportion of the total value of each company's exports of solar cells to the U.S."  Def. Resp. Br., at 10.  Later on, Defendant again claims that Commerce found Trina's value of processing to be minor, "Commerce determined t{sic} the value added

in the third country for Canadian Solar and Trina. . . and found that these facts established that the production in the third country was minor or insignificant." Def. Resp. Br., at 19.

This is false. As for Trina, Commerce determined that its value of processing was *significant* and *did not* represent a small portion of its total value of exports to the United States. *Preliminary Analysis Memorandum for Trina Solar Science & Technology (Thailand) Ltd*, (Dec. 1, 2022) "(TTL Prelim. Analysis Memo"), at 3, Appx1040. The only factor that Commerce determined weighed in favor of finding Trina's manufacturing in Thailand to be minor was the R&D factor. Decision Memo, at 66, Appx1121.

Second, Defendant provides a misleading oversimplification of Commerce's findings on the nature of the CSPV cell and module production processes. Defendant asserts that "Commerce described the general production process for solar modules in four steps." Def. Resp. Br., at 7. Defendant explains that these four steps are polysilicon ingot formation, ingot slicing, solar cell production, and module production. *Id*. Commerce never asserted, or even indicated in any way, that the general production process for solar cells and modules could occur in only four steps. In fact, Commerce's analysis noted that the solar cell production "step" alone actually encompasses eleven steps involving different chemical treatments, heating processes, and the formation of the p/n junction. Decision Memo, at 52,

Appx1108.  In Commerce's preliminary determination, unchanged in the

*Final Determination*, Commerce stated that "the process for turning wafers

into solar cells requires an expensive, *multi-stage* assembly line requiring

high-technological machinery and workers with strong technological

knowledge."  Memorandum from James Maeder to Lisa Wang, Antidumping

and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells,

Whether or Not Assembled Into Modules, from the People's Republic of

China, *Preliminary Decision Memorandum for the Circumvention Inquiry

With Respect to the Kingdom of Thailand*, (Dec. 1, 2022), ("Prelim. Memo"),

P.R. 497, Appx1017 (emphasis added).

        Further, Defendant's claimed "fourth" step is the entire module

production process itself, for which Commerce also determined encompasses

a multi-step process, involving an "a large number of varied inputs consumed

in a complex, multi-step production process."  *Id*., at Appx 1018.  While

Defendant hopes to downplay Commerce's findings regarding the complexity

and significance of the CSPV cell and module production process, it does so by

misconstruing record evidence and its own detailed findings.  The record is

clear that the CSPV cell and module production process is highly

sophisticated, complex, and undoubtedly involves more than four steps.

Decision Memo, at 49–53, Appx1104–1108.

Defendant's mischaracterization of Commerce's key findings reflects a misunderstanding of the record and should not be ignored. Given that Commerce has never found a process to be minor or insignificant when *only one* of the five factors weighed in favor of finding the process to be minor or insignificant, it is crucial that each factor is accurately recounted. In addition, an accurate representation of Commerce's production process analysis is especially critical here given that Commerce has never before reached an affirmative finding of circumvention after having found that the nature of the production process is complex and significant.

### C.    Commerce Unreasonably Contradicted its "Minor or Insignificant" Findings when Analyzing the R&D Factor

Even if the discussion above regarding § 1677j(b)(2)(C) does not compel a negative determination as to all respondents, the administrative record of this case compels a negative determination as to Trina. Defendant fails to establish the reasonableness of Commerce's decision to elevate the R&D factor under § 1677j(b)(2)(B) over all other "minor or insignificant" factors. Defendant continues to argue that because R&D is a "particularly important factor in the solar industry," Commerce was justified in elevating this factor over all other factors. Def. Resp. Br., at 26. In doing so, Defendant cites to the nature of the investment, the "versatile" nature of the production process, and the "relative ease" of relocating R&D. *Id*., at 27–29. In other words,

despite having already reached conclusions under the other "minor or insignificant" factors of §1677j(b)(2) (i.e., the level of investment, nature of the production process, value of processing, and extent of production facilities), Defendant attempts to unwind such findings to support its assertion that R&D should be afforded pivotal consideration.

First, Defendant asserts that the nature of the investment in Thailand by Trina supports its decision to elevate the R&D factor over all other factors. Def. Resp. Br., at 27. There is no logical connection for such support, and Commerce already made a finding, as required under the statute, that Trina's level of investment in Thailand was significant. TTL Prelim. Analysis Memo, at 2, Appx1039. Commerce's analysis found that the investment in CSPV cell and module production in Thailand was *greater* than Trina's investment in wafter production in China. *Id*. Thus, this factor weighed *against* a finding of circumvention. Yet, Defendant attempts to buttress Commerce's weighty reliance on the R&D factor by disregarding Commerce's level of investment finding—which the agency was statutorily required to take into account—and inserting a consideration of the source of the investments in Thailand—which is not contemplated in the statute. Defendant has offered no rational explanation for why the source of investments, which Commerce determined *are* significant, serves as

justification to elevate the R&D factor over all other required "minor or insignificant" factors.

Second, Defendant asserts that "Commerce found that CSPV cell and module production are more versatile than wafer production and can be easily relocated to third countries." Def. Resp. Br., at 29. Defendant further explains that this is relevant because the "other 'minor or insignificant' factors fail to account for the relative ease with which the cell and module stages of the production process, even if technically complex, can be relocated to at third country." *Id.*

As an initial matter, Plaintiffs already addressed how this rationale is logically incongruent with Commerce's other findings, both in this record and in prior agency practice. Pl. Br., at 42–43. Plaintiffs addressed at length the numerous contradictions with Commerce's observation that "cell manufacturing is more versatile compared to wafers and polysilicon and has lower technical hurdles," *id.*, yet Defendant notably provides no response to these points.

Moreover, Defendant's claim that the other "minor or insignificant" factors could not capture "the relative ease" of relocating production steps is entirely false. If the level of investment is low, it would be relatively easy for companies to relocate production to a third country. Having a significant amount of investment demonstrates the capital-intensive hurdles in place

which make relocation difficult.  As for the extent of production facilities, a smaller "screwdriver" assembly with a minimal number of workers would be relatively easy to establish in a third country.  In contrast, a larger facility with more workers will undoubtedly be more difficult to construct and begin operating.  Third, a relatively straightforward assembly process with limited steps, equipment, and workers would be relatively easy to establish in a third country.  A significant and complex production process requiring "sophisticated, precise, and technologically advanced equipment, and a skilled workforce," on the other hand, requires significant effort, time, and resources to establish in another country.  Decision Memo, at 52, Appx1107.  Finally, if the value of processing in the third country is low relative to the overall value of the merchandise imported to the United States, it would be "relatively easy" for companies to move such processing to other countries.  On the other hand, a high value of processing reflects the substantial efforts and resources put in place by manufacturers to produce merchandise in a third country.

Notably, Commerce found that Trina's operations in Thailand under all of these factors were significant.  It has invested **[                    ]** into constructing and starting its CSPV cell and module production facilities.  TTL Prelim. Analysis Memo, at 2, Appx1039.  It has a very large production facility in Thailand with **[          ]** of workers and a production capacity of

[        ] megawatts.  *Id*.  Its value of processing performed in Thailand represents [        ] percent of the total value of finished modules imported into the United States.  *Id*., at 3, Appx1040.  Finally, as Commerce determined for all respondents, the CSPV cell and module production process is complex, multi-step process involving "sophisticated machinery" and "skilled technicians and employees with advanced degrees."  Decision Memo, at 51, Appx1106.

By arguing that the other factors do not capture the "relative ease" of relocating production, Defendant attempts to put Commerce in the place of Congress.  Congress specifically promulgated these five factors that Commerce must take into account because they are relevant to determining the relative ease of relocating production to another country.  Having made the statutorily required findings, Commerce cannot then ignore them.  *See Heckler v. Chaney*, 105 S. Ct. 1649, 1656 (1985) ("Congress did not set agencies free to disregard legislative direction in the statutory scheme that the agency administers."); *see also Washington Red Raspberry Com'n v. United States*, 657 F.Supp. 537, 541 (Ct. Int'l Trade 1987) (explaining that Commerce is "not at liberty to disregard the statute's plain meaning.").

In addition to Defendant's analysis lacking evidentiary support, it is also inconsistent.  When Commerce was analyzing other "minor or insignificant" factors, it refused to consider issues that would overlap or be

considered under other factors.  For example, when analyzing the "nature of

the production process" factor, Commerce rejected Auxin Solar Inc.'s request

to consider capital expenditures or the cost associated with building

production facilities because Commerce already "analyzed the level of

investment in the production facilities under {19 U.S.C. § 1677j(b)(2)(A)}."

Decision Memo, at 50, Appx1105.  Commerce did not abide by that same

principle when analyzing the significance of the R&D factor.

Similarly, Defendant itself argues that factors cannot be "double

counted."  Def. Br., at 20.  In explaining why its analysis of the value of

processing factor cannot consider the nature of the production process,

Defendant argues that "it would be illogical to evaluate the nature of the

production process under both 19 U.S.C. §§ 1677j(b)(2)(C) and 1677j(b)(2)(E).

This would double-count the nature of the production process within the

totality of the factors."  Plaintiff agrees.  Under the analysis of the R&D

factor, Defendant and Commerce cannot "double count" analyses it already

made under the "level of investment and "nature of production process"

factors.  As Defendant quoted, "a statutory term should not 'needlessly be

given an interpretation that cause it to duplicate another provision or to have

no consequence.'"  Def. Br., at 20 (quoting *Nielsen v. Preap*, 139 S. Ct. 954,

969 (2019).

The inconsistencies in Defendant's arguments only reveal the contortions required by Defendant to attempt to explain a decision that is not rationally connected to the record evidence. Overall, Defendant's attempts to rationalize the dispositive weight placed on the R&D factor by recasting—or in some instances, entirely contradicting—its prior findings on the record.

As explained, Commerce has never before found the process of assembly or completion under 19 U.S.C. § 1677j(b)(1)(C) to be minor or insignificant when only one of the factors under §1677j(b)(2) is minor or insignificant. When four of the five factors indicate that a production process is not minor and is significant, the only rational conclusion is that the production process is significant. In other words, no rational factfinder could find a production process to be insignificant based on only one factor out of five when the other four demonstrate the significance of the process. Defendant has not explained why its finding with regard to level of investment, nature of processing, extent of processing, and value added did not weigh on Commerce's decision. Commerce's findings on those factors were not ambiguous and are not disputed. Yet, Commerce ignored those four factors and relied on *only one* despite the SAA requirement that "no single

factor will be controlling."[4]  Commerce unlawfully elevated the R&D factor

over all other statutory factors to support its affirmative circumvention

determination.  Because all other factors supported a finding that Trina's

production process was significant, Commerce's decision cannot be supported

by substantial evidence because there is no "rational connection between the

facts accepted and the determination made." *Coalition of Am. Flange*

*Producers v. United States*, 517 F. Supp. 3d 1378, 1381 (Ct. Int'l Trade 2021)

(citing *Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S.

29, 43 (1983)).

## III.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court

grant its Motion for Judgment on the Agency Record and remand this case to

Commerce with instructions consistent with the points set forth in this

Memorandum.

Respectfully submitted,

/s/ Jonathan M. Freed
Jonathan M. Freed
MacKensie R. Sugama

**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C.  20003
(202) 223-3760

---

[4] Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Rep. No. 103-316 (1994) ("SAA"), at 893.

Ct. No. 23-00227                                    Public Reply Brief

Counsel to Plaintiff Trina Solar Science
& Technology (Thailand) Ltd.

Dated:  November 15, 2024